**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SOTIR LIBAROV,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 22 C 6414** |
| | ) | |
| **v.** | ) | **Judge Jeffrey I. Cummings** |
| | ) | |
| **U.S. IMMIGRATION AND CUSTOMS** | ) | |
| **ENFORCEMENT,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sotir Libarov ("Libarov") brings this action against defendant the U.S. Immigration and Customs Enforcement ("ICE") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §551 *et seq.* According to Libarov, ICE violated FOIA when it failed to respond to his FOIA request in a timely manner and wrongfully withheld responsive records, and, in doing so, violated the Administrative Procedure Act ("APA"), 5 U.S.C. §701 *et seq.* Currently before the Court are the parties' cross motions for summary judgment, (Dckt. #26 & #36), and related filings.[1] For the reasons set forth below, plaintiff's motion for summary judgment, (Dckt. #26),[2] is granted in part and denied in part, and defendant's motion for summary judgment, (Dckt. #36), is likewise granted in part and denied in part.

---

[1] The filings related to the cross-motions include: plaintiff's motion for summary judgment, (Dckt. #26), and Local Rule 56.1 statement of material facts, (Dckt. #27) ("PSOF"); defendant's motion for summary judgment, (Dckt. #36), brief in support thereof, (Dckt. #37), and Local Rule 56.1 statement of materials facts ("DSOF"), (Dckt. #38); plaintiff's reply in support of his motion for summary judgment and in opposition to defendant's motion, (Dckt. #41), and plaintiff's response to defendant's statement of facts and additional statement of facts ("PSOAF"), (Dckt. #42); and defendant's reply in support of motion for summary judgment, (Dckt. #43), and response to plaintiff's statement of additional facts, (Dckt. #44).

[2] Notably, plaintiff's initial request for summary judgment was filed in conjunction with its response to former defendant United States Citizenship and Immigration Services' ("USCIS") motion to dismiss, (Dckt. #23). As is explained in further detail below, the Court previously granted that motion to dismiss, and defendant USCIS Services is no longer a defendant in this matter, (Dckt. #29).

## I.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), *quoting* Fed.R.Civ.P. 56(c); *see* Fed.R.Civ.P. 56(a); *see also Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016). "A genuine dispute is present if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.*, 94 F.4th 654, 657 (7th Cir. 2024); *FKFJ, Inc. v. Village of Worth*, 11 F.4th 574, 584 (7th Cir. 2021) (the existence of a factual dispute between the parties will not preclude summary judgment *unless* it is a genuine dispute as to a material fact); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004) (issues of material fact are material if they are outcome determinative).

When the moving party has met that burden, the non-moving party cannot rely on mere conclusions and allegations to concoct factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Instead, it must "marshal and present the court with the evidence [it] contends will prove [its] case." *Goodman v. Nat. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248. Ultimately, summary judgment is granted only if "no reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (cleaned up). The standard for summary judgment remains

unchanged on cross-motions for summary judgment. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017).

## II.     THE FACTUAL RECORD

### A.     The Parties

The following facts are undisputed unless otherwise noted.  Plaintiff Libarov is a national and citizen of Bulgaria.  (PSOAF ¶1).  Defendant ICE is the principal investigative arm of the Department of Homeland Security and is the second largest investigative agency in the federal government.  (DSOF ¶4).  The United States Citizenship and Immigration Services, or "USCIS," is a component of the Department of Homeland Security "that oversees lawful immigration to the United States."  (PSOF ¶5; *see also https://www.uscis.gov/about-us/mission-and-core-values/what-we-do* (last visited August 16, 2024)).

### B.     Libarov's Application for Adjustment of Status

On October 20, 2015, Libarov married Ms. Elizabeth Alonso Hernandez, who at the time was a legal permanent resident.  (PSOAF ¶3; *see also* Dckt. #42 at 114).  On March 15, 2016, Libarov filed a Form I-485 Application for Adjustment of Status (the "Application") based on his marriage to Alonso Hernandez.  (PSOAF ¶4).  In December 2016, USCIS interviewed Libarov and Alonso Hernandez regarding the Application in its Miami office.  (*Id.* ¶5).  Over five years later, on March 15, 2022, USCIS issued a "Notice of Intent to Deny" ("Notice") Libarov's Application.  (*Id.* ¶7; Dckt. #42 at 112-13).  According to the Notice, at the time of the 2016 interview, Alonso Hernandez executed a sworn statement in which she "admitted to being involved in a sham marriage [with Libarov] for immigration purposes."  (PSOAF ¶8). Specifically, Alonso Hernandez purportedly stated under penalty of perjury that she was seven months pregnant and in a relationship with the father of the child (not Libarov); never resided

with Libarov; and was offered $10,000 to enter into the fraudulent marriage. (*Id.*). The Notice was not accompanied by any of Alonso Hernandez's sworn statements. (*Id.* ¶9).

In April 2022, Libarov responded to the Notice through counsel and requested production of all documents on which the Notice was based. (*Id.* ¶10). USCIS did not produce any such documents, and USCIS ultimately denied Libarov's Application on June 15, 2022. (*Id.* ¶11). The final denial provided more detail regarding Alonso Hernandez's statements, including that although she *requested* $10,000 to enter the sham marriage, Libarov only agreed to pay her $7,000. (*Id.*). Notwithstanding USCIS' denial of the Application, Libarov had not been placed in removal proceedings as of the filing of this lawsuit, and no criminal charges have been brought against him in connection with his marriage to Alonso Hernandez. (*Id.* ¶¶12-13).

**C.    Libarov's FOIA Request to ICE**

On July 2, 2022, Libarov submitted a FOIA request to defendant ICE through counsel, seeking:

> All forms, statements, notes, emails, text messages, investigative memoranda, electronically stores data, screenshots of DHS databases containing information and data, and all other documents and records pertinent to and/or relating in any way to [Libarov].

(PSOF ¶6).

Upon receipt of the request, ICE did not issue a tracking number. (*Id.* ¶7). Instead, ICE responded by email dated July 22, 2022, as follows:

> You have directed a FOIA request to U.S. Immigration and Customs Enforcement (ICE) seeking either (1) copies of your entire immigration file also known as an alien file or A-file (ICE, CBP, OBIM, USCIS records), or (2) copies of certain documents or other information that is maintained in an individual's immigration file.
>
> Complete immigration files are maintained by U.S. Citizenship and Immigration Services (USCIS). Accordingly, ICE is routing your FOIA request to

USCIS. Upon receipt of your FOIA request, USCIS will provide you with a tracking number and respond directly to your request.

(*Id*. ¶8).

In her response later that same day, Libarov's attorney clarified that the FOIA request "is for ICE records, not USCIS records," and that Libarov did *not* seek the A-File, as ICE claimed. (*Id*. ¶9). As such, plaintiff's counsel requested that ICE issue a tracking number and process the request. (*Id*.). By November 2022, ICE had still not responded to the FOIA request, and Libarov filed this FOIA action against ICE *and* USCIS. (Dckt. #1). In response, USCIS moved to dismiss the complaint against it based on Libarov's allegations that his FOIA request was for *ICE* records. (Dckt. #23).³ Following a hearing, the Court granted that motion and dismissed USCIS without prejudice, (Dckt. #29).

### D.    ICE's FOIA Procedures and Search for Responsive Documents

The following facts are taken from ICE's statement of material facts and are supported by the affidavit of ICE's FOIA Director Fernando Pineiro, (Dckt. #38 at 11-21). In response to almost every fact regarding ICE's general FOIA procedures and its search in this case, Libarov responds as follows: "Undisputed to the extent that the factual assertions in Fact [No. ___] are contained in the Pineiro Declaration." (*See, e.g.,* Dckt. #42 at 2-3). As ICE points out, however, such a response is not sufficient to properly dispute a statement of fact. *See* N.D.Ill. Local Rule 56.1 ("To dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary

---

³ In its motion to dismiss, USCIS explains that Libarov submitted a FOIA request to USCIS seeking his A-file on the same date he issued a request to ICE. (Dckt. #23 at 2). USCIS further maintained that it had since responded and produced the non-exempt portions of Libarov's A-file. (*Id*.).

material.").  The Court, in its discretion, will enforce Local Rule 56.1 and deem these facts admitted.

According to the affidavit of FOIA Director Pineiro, when ICE receives a FOIA request, its FOIA office evaluates the request to determine if it is a proper request and, if so, enters the request into a database called FOIAXpress.  (DSOF ¶5).  Next, depending on the description of the records being sought, the FOIA office identifies the specific program office(s) that are reasonably likely to possess the responsive records, and tasks the appropriate office(s) with conducting the necessary searches.  (*Id*. ¶6).

Upon receipt of a request from the FOIA office, the point-of-contact within a program office – based on their experience and knowledge of the program office's practices and operations – will forward the request to the specific employees or component offices that are reasonably likely to have responsive records.  (*Id*. ¶7).  The employees and component offices are then directed to conduct searches of their file systems that, in their judgment, are reasonably likely to contain the responsive records.  (*Id*. ¶8).  Once the searches are complete, the employees provide any potentially responsive records to the point-of-contact, who in turn provides them to the FOIA office, which reviews the records for responsiveness and any applicable FOIA exemptions.  (*Id*. ¶9).

After it received Libarov's FOIA request, ICE's FOIA office determined based on the above protocol that the Office of Homeland Security Investigations ("HSI")[4] and the Office of Enforcement and Removal Operations ("ERO")[5] were the program offices likely to have

---

[4] HSI is "responsible for investigating a wide range of activities arising from the illegal movement of people and goods into, within, and out of the United States," including immigration crime.  (DSOF ¶14).

[5] ERO "oversees programs and conducts operations to identify and apprehend removable noncitizens, to detain them when necessary, and to remove them from the United States."  (DSOF ¶21).

responsive records, should any exist. (*Id*. ¶12). Accordingly, the FOIA office instructed HSI and ERO to conduct a comprehensive search for responsive records and to provide any potentially responsive records back to the FOIA office. (*Id*. ¶13).

### 1. ERO's Search

Upon receipt of Libarov's FOIA request, an ERO management and program analyst searched ERO's Central Index System database and its Enforce Alien Removal Module database using Libarov's alien number. (DSOF ¶24). That search did not yield any responsive records, and it was determined that Libarov was never in ERO custody. (*Id*.).

### 2. HSI's Search

Upon receipt of Libarov's FOIA request, an HSI analyst first searched HSI's Investigative Case Management system using Libarov's name, date of birth, alien number, and country of birth. (*Id*. ¶15). That search identified records, and HSI further determined that the special agent in charge ("SAC") of the Miami Field Office – who was responsible for the investigation into Libarov – was likely to have other records not in the Investigative Case Management system. (*Id*.). The SAC then conducted a four-hour search for records in the following systems using Libarov's name: the Person Centric Query Service; the Treasury Enforcement Communications System; the Arrival and Departure Information System; the Central Index System; the Customer Profile Management Service; the Electronic Immigration System; the Automated Targeting System; the Consular Consolidated Database; the Student and Exchange Visitor Information System; the Investigative Case Management System; and the National Crime Information Center. (*Id*. ¶16; Dckt. #38 at 16 (describing the various systems)). The SAC also searched an electronically stored folder and his Outlook emails using the term "Libarov." (*Id*. ¶17).

HSI's search efforts ultimately revealed six pages of potentially responsive documents. (*Id*. ¶18).  HSI determined, however, that the six pages should be withheld in their entirety pursuant to 5 U.S.C. §552(b)(7)(A) due to the open status of an ongoing law enforcement investigation.  (*Id*. ¶19).  As a result, on September 19, 2023 – over a year after Libarov issued his FOIA request – ICE sent him a letter bearing a tracking number and explained that six potentially responsive records were being withheld as exempt.  (*Id*. ¶20).

### III.    ANALYSIS

In their cross-motions for summary judgment, both parties seek judgment in their favor, whether in whole or in part.  According to Libarov, ICE violated FOIA initially by failing to issue a tracking number and process his request in a timely manner (Count I) and, subsequently, by improperly withholding responsive documents (Count II), and he seeks judgment in his favor as to both of those counts.  Libarov does not seek judgment in his favor as to Count III, in which he claims ICE violated the APA.

In its motion, ICE argues that: (1) its untimely response does not, standing alone, warrant judgment in plaintiff's favor; (2) it conducted a reasonable search for responsive documents; (3) it has met its burden to show it is properly withholding documents under the appropriate FOIA exemption; and (4) that any claim under the APA must fail where, as here, an adequate remedy exists under FOIA.  In ICE's view, all of this this entitles it to judgment in its favor on all counts of plaintiff's complaint.  For the most part, the Court agrees.

### A.    The Freedom of Information Act.

As the Seventh Circuit has articulated, "[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Rubman v. U.S. Citizenship*

& *Immigr. Servs.*, 800 F.3d 381, 386 (7th Cir. 2015), *quoting N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). As such, FOIA provides that agencies (including ICE)[6] "shall make . . . records promptly available to any person" who submits a request that "(i) reasonably describes such records and (ii) is made in accordance with [the agency's] published rules." 5 U.S.C. §552(a)(3)(A). Nonetheless, "Congress has structured various exemptions from the FOIA's disclosure requirements in order to protect certain interests in privacy and confidentiality." *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1037 (7th Cir. 1998). Pursuant to FOIA, the district court must review an agency's denial of a FOIA request *de novo*, and the agency bears the burden of justifying its decision to withhold records under the statutory exemptions. 5 U.S.C. §552(a)(4)(B).

With the statutory purpose and the evidentiary burden in mind, the Court turns to the issues presented by the parties' motions.

**B.     ICE's Untimely Response to the FOIA Request Does Not Alone Warrant Judgment in Plaintiff's Favor.**

Upon receipt of a proper request under FOIA, the agency must determine within 20 days whether to comply with such request and "immediately notify" the requester of that decision. 5 U.S.C. §552(a)(6)(A)(i). If the agency determines "that unusual circumstances apply," it may invoke an additional ten-day extension to make its determination. 5 U.S.C. §552(a)(6)(B)(i). However, "[i]f an agency, after a lawsuit is filed . . . fulfills an outstanding FOIA request, the statute does not authorize courts to order any retroactive relief in favor of the plaintiff, apart from the possible recovery of attorney fees and costs." *Stevens v. United States Dep't of Health & Hum. Servs.*, No. 22 C 5072, 2023 WL 6392407, at *3 (N.D.Ill. Oct. 2, 2023) (citing *Walsh v. U.S. Dep't of Veterans Affs.*, 400 F.3d 535, 537 (7th Cir. 2005)); *Henderson Parks, LLC v.*

---

[6] It is undisputed that ICE is a federal agency subject to FOIA's requirements. (PSOF ¶4).

*Federal Bureau of Prisons*, No. 23 C 13762, 2024 WL 1834150, at *3-4 (N.D.Ill. Apr. 26, 2024) (same). As the Seventh Circuit has recognized, "FOIA's citizen suit provision provides only injunctive relief and has no remedy for cases . . . in which an agency is late in producing the requested records." *Walsh*, 400 F.3d at 537; *Henderson Parks*, 2024 WL 1834150, at *4 (the agency's "untimely response is alone insufficient to warrant judgment in Henderson's favor."); *Stevens*, 2023 WL 6392407, at *7 ("Stevens appears to argue that she is entitled to summary judgment *solely* on the basis that HHS did not comply with FOIA's statutory deadlines. That argument fails.") (emphasis in original); *Citizens for a Strong New Hampshire, Inc. v. I.R.S.*, No. 14-CV-487-LM, 2015 WL 5098536, at *6 (D.N.H. Aug. 31, 2015) (same); *Hainey v. U.S. Dep't of the Interior*, 925 F.Supp.2d 34, 42 (D.D.C. 2013) (same).[7]

Instead, "[a]ny person making a request to any agency for records . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph." 5 U.S.C. §552(a)(6)(C)(i). Here, it is undisputed that – as alleged in Count I – ICE failed to respond to Libarov's FOIA request under the requisite statutory timeframe. Indeed, ICE did not provide a response to Libarov's request until September 2023, over a year after it was submitted. Accordingly, the Court finds that Libarov constructively exhausted his administrative remedies under FOIA, *see* 5 U.S.C. §552(a)(6)(C)(i), and it turns to the questions of whether ICE conducted a proper search for responsive records and is properly withholding those records under FOIA. *Hainey*, 925 F.Supp.2d at 42 ("[G]iven that the Department has now responded to [plaintiff's] request . . . the

---

[7] In light of this authority and the record in this case, this Court declines Libarov's invitation to follow the path charted by the decision in *Prison Legal News v. U.S. Dep't of Homeland Sec.*, 113 F.Supp.3d 1077 (W.D.Wash. 2015), which recognized that in "the Ninth Circuit, courts sometimes enforce FOIA's timeliness requirements independent of the underlying disclosure issues, at least when the violation is 'egregious' or when there is a 'pattern or practice' of delay." *Id.*, at 1084 (cleaned up).

only issue for the Court to consider at this point is whether the Department's response complies with its obligations under FOIA.") (emphasis in original).

### C.   ICE Conducted a Reasonable Good Faith Search for Responsive Records.

To prevail on his motion for summary judgment, Libarov must show that there is no genuine dispute that "[]he has *not yet received* records to which []he is entitled because the agency has '(1) improperly; (2) withheld; (3) agency records.'"  *Stevens*, 2023 WL 6392407, at *3, *quoting White v. United States Dep't of Just.*, 16 F.4th 539, 543 (7th Cir. 2021).

"Agency records may be found to be improperly withheld if the agency failed to make 'a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'"  *White v. Dep't of Just.*, 460 F.Supp.3d 725, 735 (S.D.Ill. 2020), *aff'd sub nom. White*, 16 F.4th 539, *quoting Rubman*, 800 F.3d at 387.  "A court presumes that the agency acted in good faith . . . [and] [t]hat presumption can be supported by reasonably detailed, non-conclusory affidavits describing the agency's search."  *Stevens v. U.S. Immigr. & Customs Enf't*, 432 F.Supp.3d 752, 761 (N.D.Ill. 2020) (internal quotations and citations omitted).  A plaintiff can respond to an agency's affidavit by presenting "'countervailing evidence' as to the adequacy of the agency's search."  *Rubman*, 800 F.3d at 387, *quoting Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314 (D.C.Cir. 2003). "Importantly, the question at summary judgment is not whether the agency *might* have additional, unidentified responsive documents in its possession . . . Rather the court need only determine whether the search itself was performed reasonably and in good faith."  *Rubman*, 800 F.3d at 387.

Here, ICE has submitted the declaration of FOIA Director Pineiro, which described the search ICE conducted in response to Libarov's request.  Again – as outlined above, *supra* at

Section II.D. – ICE identified the two program offices (HSI and ERO) best equipped to search for responsive records and, ultimately, searched using Libarov's name in eleven separate databases, along with the inbox and file of the SAC at the Miami Field Office. At the outset, Pineiro's non-conclusory and detailed affidavit supports the presumption that ICE's search for responsive documents was reasonable and conducted in good faith. *See, e.g., Stevens v. United States Dep't of State*, 20 F.4th 337, 343 (7th Cir. 2021).

In response, Libarov only takes issue with the search conducted by the SAC and his objections are speculative at best. For example, Libarov asserts that ICE's search was inadequate because it used only his name and not his A-number and/or date of birth. But his primary support for this assertion is that a "simple typo" of his name would not have picked up results. (Dckt. #41 at 13). As ICE notes, however, "[a]dministrative regularity is the baseline assumption throughout our law, FOIA included," *Stevens*, 20 F.4th at 343, and the Court will not assume that ICE's search was inadequate because it *could* have made a typo.

Otherwise, Libarov asks the Court to draw conclusions based on similarly speculative observations, including that USCIS's separate production undermines the adequacy of ICE's search; that it is "virtually impossible" that ICE's search found no additional records; and that ICE should have searched for his wife's name as well. But such speculation simply does not amount to "countervailing evidence" as to the adequacy of ICE's search, *Rubman*, 800 F.3d at 387, and the Court finds that ICE's search was sufficient here. *See Ferranti v. ATF*, 177 F.Supp.2d 41, 48 (D.D.C. 2001), *aff'd*, No. 01-5451, 2002 WL 31189766 (D.C.Cir. Oct. 2, 2002) ("[S]peculation that other documents might exist that are possibly responsive to the request is insufficient to overcome summary judgment.").

**D.    ICE Has Met its Burden to Withhold a Portion of the Records at Issue Under Exemption 7(A).**

Again, "FOIA requires a federal agency upon request to disclose records in its possession, subject to nine exemptions." *Enviro Tech Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 374 (7th Cir. 2004). "[I]n view of the mandate for broad disclosure," the Seventh Circuit has cautioned, "those exemptions are to be construed narrowly." *Id.* For the same reason, the "[g]overnment bears the burden of justifying its decision to withhold the requested information pursuant to a FOIA exemption." *Solar*, 142 F.3d at 1037.

"An agency can carry its burden on summary judgment by submitting affidavits that "(1) describe[s] the withheld documents and the justifications for non-disclosure with reasonably specific detail, (2) demonstrate[s] that the information withheld falls logically within the claimed exemption, and (3) are not controverted by either contrary evidence in the record or by evidence of agency bad faith." *White*, 460 F.Supp.3d at 738, *quoting Kimberlin v. Dep't of Treasury*, 774 F.2d 204, 210 (7th Cir. 1985). Courts "must accord substantial weight to an agency's affidavit" and "[u]ltimately an agency's justification for invoking a FOIA exemption . . . is sufficient if it appears logical or plausible." *Am. C.L. Union v. C.I.A.*, 710 F.3d 422, 427 (D.C.Cir. 2013) (internal quotations and citations omitted); *see also Baker v. Fed. Bureau of Investigation*, No. 14 C 9416, 2016 WL 7131522, at *2 (N.D.Ill. Dec. 6, 2016), *aff'd*, 863 F.3d 682 (7th Cir. 2017) ("The court, in conducting [its] review, gives "substantial weight" to affidavits from the agency.").

The only claimed exemption at issue here is 7(A), which exempts from production "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. §552(b)(7)(A). To meet this burden, the

agency "need not establish that release of a particular document would actually interfere" with an enforcement proceeding. *Wilson v. United States Dep't of Treasury*, No. 15 C 9364, 2016 WL 8504990, at *8 (N.D.Ill. Oct. 12, 2016). Rather, the government need show only 'that, with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally interfere with enforcement proceedings.'" *Int'l Union of Elevator Constructors Loc. 2 v. U.S. Dep't of Lab.*, 747 F.Supp.2d 976, 981 (N.D.Ill. 2010), *quoting Robbins Tire*, 437 U.S. at 236.

To support of its motion, ICE initially submitted the Pineiro affidavit, along with its *Vaughn* index describing the six pages withheld under exemption 7(A), a document it has titled "Homeland Security Investigations Report" ("the Report"). (Dckt. #38); *See Int'l Union of Elevator Constructors*, 747 F.Supp.2d at 980 (explaining that "a *Vaughn* index is a comprehensive listing of each withheld document cross-referenced with the FOIA exemption that the Government asserts is applicable."). In the affidavit (and *Vaughn* index), Pineiro explains that the records relate to an "open, active, and ongoing criminal investigation," and – if released – could "cause an articulable harm to the ongoing investigation." (Dckt. #38 at 20, 22).

At the outset, the Court notes that the Pineiro affidavit and accompanying *Vaughn* index would likely be sufficient to support ICE's withholding of the Report under Exemption 7(A) and that Libarov has, once more, offered little beyond speculation to rebut ICE's reliance on that exemption.[8] *See White*, 460 F.Supp.3d at 738 ("The agency is entitled to a presumption of good

---

[8] For example, Libarov asks the Court to assume some sort of bad faith based on ICE's interchangeable use of the terms "investigation" and "investigation*s*," without any helpful articulation how that may change the application of the exemption, which, generally speaking, could apply equally to one investigation or multiple investigations. Libarov also implies that the exemption could not reasonably apply because USCIS (a separate component of the Department of Homeland Security) did not rely on it when it disclosed documents in response to a different FOIA request. But USCIS is no longer a defendant here and its claimed exemptions have no bearing on ICE's claimed exemptions. Finally,

faith which cannot be rebutted by mere speculation."); *see also Wilson*, 2016 WL 8504990, at *9 (noting that "courts have recognized that a more explicit description of documents withheld under Exemption 7(A) would defeat the purpose of the Exemption . . .") (internal quotations omitted). More importantly, however, the Court granted ICE's request to submit the Report for *in camera* review to facilitate its resolution of the parties' motions. (Dckt. #45) (*citing Vidal-Martinez v. U.S. Immigr. & Customs Enf't*, No. 20 C 7772, 2022 WL 2181427, at *2 (N.D.Ill. June 16, 2022), *aff'd sub nom. Vidal-Martinez v. United States Dep't of Homeland Sec.*, 84 F.4th 743 (7th Cir. 2023) ("In determining whether the claimed exemptions apply, a court may conduct an *in camera* review of the disputed documents."). The Court's *in camera* review – together with facts set forth in the Pineiro affidavit – confirmed that ICE has met its burden to withhold the portions of the Report which could reasonably be expected to interfere with enforcement proceedings if disclosed.

At the same time, the Court does not agree that the entirety of the Report has been properly withheld under Exemption 7(A). In particular, several categories of information contained in the Report include basic personal information regarding Libarov himself that Libarov is undoubtedly aware of already. ICE has not articulated why the disclosure of such information to Libarov would interfere with any ongoing proceedings. As such, and because FOIA requires disclosure of "[a]ny reasonably segregable portion" of an otherwise exempt record, 5 U.S.C. §552(b), the Court directs ICE to disclose the information in the following sections of the Report: (a) Title (inclusive of the agency's name and Liborov's name); (b) Biographics; (c) Addresses; (d) Citizenship and Status; (e) Associated Phones; (f) Driver's License; (g) Passport; (h) Employment; (i); Marriage; and (j) the portion of the Identification

contrary to Libarov's assertion, the expiration of the statute of limitations to prosecute for his purportedly sham marriage does not alone mean that any investigations related thereto must be closed.

section that list his Social Security Number and his Alien File Number. The remainder of the Report shall remain redacted pursuant to Exemption 7(A).

### E. ICE is Entitled to Judgment in its Favor on Plaintiff's Claim under the Administrative Procedures Act.

Finally, in Count III, plaintiff alleged that ICE violated the APA by failing to properly respond to his (and many other) FOIA requests. However, it is well settled that "the APA does not provide an independent cause of action when FOIA provides an adequate remedy." *Nelson v. U.S. Army*, No. 10 C 1735, 2011 WL 710977, at *3 (N.D.Ill. Feb. 22, 2011) (citing *Walsh*, 400 F.3d at 538); *see also Bochra v. United States Dep't of Educ.*, No. 21 C 3887, 2022 WL 4182405, at *2 (N.D.Ill. Sept. 12, 2022), *aff'd sub nom. Bochra v. Dep't of Educ.*, No. 22-2903, 2024 WL 808061 (7th Cir. Feb. 27, 2024) ("When a plaintiff can bring suit directly against the regulated entity, he cannot seek relief from the federal agency under the APA"). Accordingly, where, as here, plaintiff has an adequate remedy under FOIA – and has sought that remedy in this action – the APA is not in play and cannot be relied upon. *See Khan v. U.S. Dep't of Homeland Sec.*, No. CV 22-2480 (TJK), 2023 WL 6215359, at *7 (D.D.C. Sept. 25, 2023) ("Plaintiffs cannot recast their FOIA claims as APA ones, regardless of whether their FOIA claims turn out to be successful.").

16

## CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment, (Dckt. #26), is granted in part and denied in part, and defendant's motion for summary judgment, (Dckt. #36), is granted in part and denied in part.


**DATE: August 21, 2024**

**Jeffrey I. Cummings**
**United States District Court Judge**